[No. 27776.   Department Two.   May 13, 1940.]

B. E. GREGORY, *Respondent,* v. R. E. MORROW *et al.,*
*Appellants.*[1]

[1]Reported in 102 P. (2d) 699.

*Robt. J. Murray* and *R. E. Young,* for appellants.

*H. A. Davis,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover the balance due on two promissory notes executed by defendants and to foreclose a chattel mortgage given as security therefor. At the conclusion of the evidence, a jury, called to sit in an advisory capacity, was, upon stipulation of the parties, discharged, and the court thereafter made findings and conclusions in favor of plaintiff. From a judgment and decree thereon, defendants have appealed.

Respondent Gregory is a dealer in automobiles in the town of Okanogan, Washington. Appellants Morrow, husband and wife, operate a farm near Winthrop, in Okanogan county.

In response to a newspaper advertisement in which respondent offered to sell or trade used cars and trucks for livestock, grain, or lumber, appellants called at respondent's place of business on May 12, 1936. At that time, appellants had a substantial credit with Fender Lumber & Box Co., hereinafter referred to as the "Fender Co.," located at Twisp, a few miles distant from Winthrop.

As the result of negotiations between the parties, appellants agreed to purchase from respondent a used

Ford sedan at a price of $650, and a used Ford truck at a price of $595. It was further agreed that one-half of the total purchase price of the two machines was to be paid by appellants in lumber, which respondent was to order from the Fender Co., and which, when ordered, was to be charged against the credit which appellants had with that company. It is conceded that the Fender Co. was not a party to the agreement, and that the transaction did not operate as an assignment of any part of appellants' outstanding credit.

The transaction was consummated by the delivery of the two machines to appellants and the execution by them of four promissory notes, each dated May 12, 1936. The notes were executed on printed forms which read in part: "Principal and interest payable only in lawful money of the United States."

Two of the notes, totalling $650, were made payable on or before May 26, 1936, and in the lower left-hand corner of each were written the words "to be paid by lumber or boxes." These two notes represented a little more than one-half of the purchase price of both the sedan and the truck, and are the notes involved in this suit.

The other two notes, totalling $595 and representing the balance of the purchase price of both machines, were made payable in cash on or before August 1, 1936. Those two notes were paid at maturity as agreed, and are not involved in the present litigation.

After the deal had been consummated, appellants made arrangements with the Fender Co. for delivery to respondent of lumber and boxes which might be ordered by him, such deliveries to be charged against appellants' credit with the company. The lumber which respondent was thus to obtain was to be used by him in the construction of certain houses. The boxes which he was to order were intended for resale

as purchasers could be procured by him. It is undisputed that respondent was to specify the amount and the places of delivery of the lumber and boxes as he should desire them.

On June 6, 1936, respondent placed with the Fender Co. an order for lumber amounting to $159.02. The order was promptly filled. Again, on June 12, 1936, respondent placed a similar order, amounting to $66.16. That order was likewise filled.

Sometime between the middle of July and the first of August, respondent ordered from the Fender Co. a quantity of boxes for which he had then procured a purchaser. The boxes, however, were never sent, although respondent made a number of inquiries and requests concerning them, and appellants were so advised.

On August 19, 1936, a receiver for the Fender Co. was appointed, and since that time respondent has been unable to obtain any further deliveries of lumber or boxes from that company. This action was thereupon brought by respondent to recover the unpaid balance of the notes in question.

At the trial, appellants testified that, at the time of the original transaction, respondent was informed of the precarious financial condition of the Fender Co. They contend, therefore, that their duty to deliver lumber was conditioned upon respondent's specifying, within a reasonable time, the lumber or boxes that he wanted; that, under the circumstances, respondent's delay in placing his orders was for an unreasonable length of time; and that appellants are accordingly discharged from their obligation.

Respondent, on the other hand, denied that he was ever informed of the financial condition of the Fender Co. He, in turn, contends that appellants' sole remedy for any unreasonable delay on his part would be a

counterclaim for damages, and that appellant cannot now claim that they were completely discharged from their obligation. It is his further contention that the notes in question were payable at the makers' option, in money or in lumber; and that, since the makers failed to exercise their option prior to the maturity date, the notes became payable in money only, and the arrangement for payment in lumber is therefore no longer involved.

We do not agree entirely with the position of either of the parties.

█ The notes in question are not negotiable instruments, because they are not unconditional promises to pay a sum certain in money, Rem. Rev. Stat., § 3392 [P. C. § 4072]; nor do they contain provisions giving the *holder* an *election* to require something to be done *in lieu* of the payment of money. Rem. Rev. Stat., § 3396 [P. C. § 4076]. See, also, 10 C. J. S. 541, § 94.

The instruments are simply promissory notes payable in specific articles of property. Notes of this kind naturally fall into different classes according to their peculiar terms and conditions and the express or implied intention of the parties.

█ While there is some diversity of opinion respecting the construction of certain forms of such notes, the weight of authority is to the effect that promissory notes payable in property give the maker the option of discharging his obligation at or before maturity by payment either in money or in the designated commodities. 7 Am. Jur. 857, § 125.

In *Cock v. Blalock,* 1 Wash. Ter. 561, each of two notes contained a promise to pay on a certain day the sum of $1,250 in United States gold coin, to be paid in good merchantable wheat, at fifty cents per bushel, delivered at a specified place, in good shipping order.

At maturity of the notes, the maker tendered to the payee the amount due in U. S. gold coin. The payee refused the tender and insisted on delivery of the wheat, which had then risen in price. It was held that the contract was to be construed, not as one for the delivery of wheat, but as one giving the maker the right of election to pay in gold coin or in wheat at the stipulated price. While that case was an early decision, it appears to be the only one in this jurisdiction touching the subject under consideration. We believe the holding to be sound and in accordance with the current weight of authority.

A corollary to the rule just stated, likewise supported by the weight of authority, is that such notes become absolute promises to pay in money if the articles designated are not paid on the day of payment. The cases so holding are too numerous for individual citation. Many of them are collected in 7 Am. Jur. 858, § 125, n. 6; 10 C. J. S. 981, § 445, n. 18; 8 C. J. 576, § 801, n. 20.

If, then, this case is to be determined by the application of the rules above noted, we would be compelled to hold that appellants had the option of paying the notes on or before their maturity, May 26, 1936, either in money or in lumber or boxes, but having failed to make payment at that time through either medium, they became obligated to pay in money only. Upon that theory, they would now be liable in the amount of the judgment.

However, it clearly appears from the record that the parties well understood that respondent was not to receive any lumber or boxes until *after* May 26, 1936, which was the date of maturity of the notes. The testimony of the parties themselves and the correspondence between them indicate beyond any question that it was their understanding and intention

that respondent was to receive the lumber and boxes as ordered by him on and after that date. In fact, there is virtually no dispute on that issue. We therefore regard the contract evidenced by the notes in question as one wherein appellants had the right to make payment in commodities, rather than in cash, within a reasonable time after May 26, 1936. Hence, respondent's contention, that at maturity the notes became payable in money only, cannot be sustained, for the reason that the rule of law upon which that contention is based is not applicable to the facts of the instant case.

We will now consider appellants' contention. They take the position that respondent did not place his orders within a reasonable time after May 26, 1936; and that, since the Fender Co. became insolvent after a reasonable time for ordering the material had elapsed, they, the appellants, are absolved from further liability on the contract.

■ It is undoubtedly true that designation by the respondent of the kind and amount of material, and of the times and places of delivery, was a condition precedent to performance by appellants, for without such designation by respondent it was impossible for appellants to perform.

"Where a promise cannot be performed in accordance with its proper interpretation without some precedent or concurrent act or forbearance by the promisee, that act or forbearance is a condition." Restatement of Contracts, 376, § 262.

See, also, 3 Williston on Contracts (Rev. ed.), 2494, 2495, § 887A.

■ However, we do not believe that the record substantiates appellants' claim of unreasonable delay on the part of respondent in placing his orders. The lumber which he was to receive was to be used by

him in the construction of certain houses. Respondent ordered the lumber as it was needed by him in the course of such construction, and there is no evidence to the contrary. Furthermore, the boxes which respondent was to obtain were for resale to future purchasers, and naturally would not be ordered until purchasers were obtained and the place, or places, of delivery determined. Under such circumstances, a delay, if it be so called, of six weeks or two months cannot be said, as a matter of law, to be unreasonable.

Appellants' contention is predicated upon the fact that the insolvency of the Fender Co., over which they had no control, cut off their intended source of supply of lumber. Although they testified that, at the time of the original transaction, they advised respondent of the precarious condition of that company, they also testified very emphatically that they themselves were not uneasy about the situation. Respondent, on the other hand, denied that he had been so informed, and the memorandum decision of the trial court, as well as its findings of fact, indicate very clearly that the court was of the view that respondent was not at fault. Had respondent known, at the time of the original transaction, that the Fender Co. was in a precarious financial condition, it is doubtful that he would have entered into the contract at all.

Moreover, conceding that respondent may have understood that, as a practical matter, appellants would endeavor to supply the material from that particular source, there was no agreement on the part of respondent to look to that source alone. His interest was merely in obtaining the material from whatever source appellants should supply it, and had appellants procured deliveries from some other source, respondent would have been bound to accept them. In other words, it was appellants' duty to see that the

material was delivered to respondent when ordered, and a failure to perform that duty constituted a breach of their contract.

For these reasons, we hold that appellants' contention cannot be sustained.

The judgment and decree are affirmed.

BLAKE, C. J., BEALS, and JEFFERS, JJ., concur.

[1]Reported in 102 P. (2d) 679.